GILBRIDE, TUSA, LAST & SPELLANE, LLC
Todd. S. Sharinn (CT 419121)
1011 High Ridge Road, Suite 305
Stamford, CT 06905
Telephone: (203) 542-8418
tss@gtlslaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

---------------------------------------------------x
                                 :

**GEMMA KWOLEK**            :

                                 :

              **Plaintiff,**       :

                     **v.**            :

                                 :

**NRT NEW ENGLAND LLC D/B/A**  :
**COLDWELL BANKER REALTY,**    :
**FRANK BALISCIANO,**               :
**NANCY SILVERSTEIN, and**      :
**TAYLOR BALISCIANO**           :
              **Defendants.**  :
---------------------------------------------------x

**Civil Action No.:**

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Gemma Kwolek ("Ms. Kwolek" or "Plaintiff") by and through her attorneys

alleges as and for her Complaint against NRT New England LLC d/b/a Coldwell Banker Realty

("Coldwell"), Frank Balisciano ("Mr. Balisciano"), Nancy Silverstein ("Ms. Silverstein"), and

Taylor Balisciano ("Ms. Balisciano") (collectively, the "Defendants") as follows:

<u>**NATURE AND BASIS OF ACTION**</u>

1.     This is an action for violations of the Connecticut Unfair Trade Practices Act

("CUTPA"), Connecticut General Statutes §§ 42-110a *et seq.*; concealment of material facts in

violation of § 20-328-5a of the Regulations of Connecticut State Agencies and Connecticut

General Statutes § 20-320; fraudulent nondisclosure of material facts; breach of fiduciary duties;

breach of the implied covenant of good faith and fair dealing; civil conspiracy; fraudulent

prevention of inquiry; professional negligence; breach of contract; and negligent infliction of

emotional distress under the Connecticut common law.

## JURISDICTION AND VENUE

2.       This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332

by virtue of Ms. Kwolek being a citizen of the State of Washington, and the Defendants being

citizens of the State of Connecticut, except for Coldwell, which is a citizen of the State of New

Jersey, and since the matter in controversy exceeds the sum of $75,000, exclusive of interests

and costs.

3.       This Court has supplemental jurisdiction over Ms. Kwolek's state and common

law claims pursuant to 28 U.S.C. § 1367.

4.       This Court has personal jurisdiction over the Defendants in that they transact

business in the State of Connecticut and committed torts in this State.

5.       Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that Defendants

are corporations and individuals subject to personal jurisdiction in this judicial district.

## THE PARTIES

6.       Plaintiff Gemma Kwolek is an individual who is a domiciliary of the State of

Washington. Ms. Kwolek is the former owner of the residential property located at 341 Amity

Road, Bethany, Connecticut (the "Property").

7.       Defendant Coldwell is a worldwide real estate brokerage company licensed in the

State of Connecticut and transacting business in Connecticut, with a principal place of business

located at 175 Park Avenue, Madison, NJ 07940, and which owns, controls, and/or maintains an

office and place of business located at 1024 Main Street, Branford, CT 06405-3732.

8.      Defendant Frank Balisciano is a real estate agent employed at Coldwell, who is licensed in the State of Connecticut. Frank Balisciano is a citizen of the State of Connecticut, currently residing at 520 Washington Avenue, Apartment 3110, North Haven, CT 06473-1313.

9.      Defendant Nancy Silverstein is a real estate agent employed by Coldwell, who is licensed in the State of Connecticut. Ms. Silverstein is a citizen of the State of Connecticut, currently residing at 29 Fairgrounds Road, Woodbury, CT 06798.

10.     Defendant Taylor Balisciano is an individual who is a citizen of the State of Connecticut, residing at 171 Cheshire Road, Bethany, CT 06524-3163. Ms. Balisciano was the sole owner of the Property prior to its sale to Gemma Kwolek, and owned the Property between January 5, 2018, and September 15, 2021.

## BACKGROUND FACTS

### MS. KWOLEK'S PURCHASE OF THE PROPERTY

11.     In the Summer of 2021, Ms. Kwolek sought to purchase a home in the greater New Haven region of Connecticut.

12.     Throughout Ms. Kwolek's housing search in the Summer of 2021, Ms. Kwolek was represented by Ms. Silverstein, a real estate agent at Coldwell.

13.     In or around July 2021, Ms. Silverstein recommended that Ms. Kwolek visit the Property, which as provided above is located at 341 Amity Road, Bethany, Connecticut, and comprised a ranch-style home situated on 1.3 acres of seemingly pristine rural land.

14.     At the time, the Property was owned by Ms. Balisciano, and listed for sale by Coldwell's employee, Mr. Balisciano, who was at all times relevant to this Complaint a licensed real estate agent in the State of Connecticut and the father-in-law of Ms. Balisciano.

15.     On August 7, 2021, Ms. Kwolek entered into a Dual Agency/Designated Agency

Disclosure Notice and Consent Agreement ("Dual Agency Agreement") with Coldwell pursuant to which Coldwell agreed to represent Ms. Kwolek as a dual agent in connection with her purchase of the Property. A copy of the Dual Agency Agreement is attached hereto as **Exhibit A**.

16. Pursuant to the Dual Agency Agreement, Coldwell formally designated Mr. Balisciano to represent his daughter-in-law, Ms. Balisciano, and formally designated Ms. Silverstein to represent Ms. Kwolek in connection with the purchase and sale of the Property.

17. Under the Dual Agency Agreement, Coldwell and Ms. Silverstein owed undivided fiduciary duties to Ms. Kwolek, including, but not limited to duties of "loyalty, reasonable care, disclosure, obedience to lawful instruction, confidentiality, and accountability." *See* **Exhibit A**.

18. Believing the Defendants to be acting in good faith, Ms. Kwolek entered into negotiations with Ms. Balisciano, Mr. Balisciano, and Coldwell to purchase the Property.

19. As licensed real estate agents, Mr. Balisciano, Ms. Silverstein, and Coldwell owed a heightened duty of care to Ms. Kwolek, which included the duty to disclose material facts bearing on the Property.

20. Even though the Defendants knew that a serious environmental hazard was likely hidden beneath the Property's well-manicured lawn, the Defendants failed to warn Ms. Kwolek of that fact at any point during Ms. Kwolek's negotiations to purchase the Property.

21. Additionally, in August 2021, Ms. Balisciano completed a Residential Property Condition Report for the Property pursuant to Connecticut General Statutes Section 20-327b (the "Report"). A copy of the Report is annexed hereto as **Exhibit B**.

22. In a further effort to conceal the fact that a serious environmental hazard was likely

hidden beneath the Property's well-maintained lawn, Ms. Balisciano checked off the box labeled

"N/A" (or, "Not Applicable"), in response to Item No. 18: "Are you aware of any problems with

the underground storage tank? If yes, explain . . .."

23. Adding insult to injury and ignoring their well-established statutory obligation to disclose

the likelihood of a serious environmental hazard hidden beneath the Property's well-manicured

lawn, neither Coldwell nor Mr. Balisciano corrected the Report.

24. Relying on the Defendants' candor and good faith to disclose any such material hidden

defects, Ms. Kwolek signed and executed a Real Estate Purchase and Sales Agreement (the

"Purchase Agreement") for the Property on or about August 8, 2021. A copy of the Purchase

Agreement is annexed hereto as **Exhibit C**. The Purchase Agreement contained no references to

or disclosures of material facts that might bear on the Property.

25. Out of an abundance of caution, Ms. Kwolek then engaged a home inspection company

to assess the Property, which inspection occurred on or about August 10, 2021, and did not

uncover any material defects or significant concerns with the Property.

26. As a result, Ms. Kwolek proceeded to purchase the Property, trusting that the Defendants

would follow the law and disclose any serious problems affecting the Property.

27. On or about September 15, 2021, Ms. Kwolek and Ms. Balisciano closed on the Property

pursuant to the Purchase Agreement for the sum of $405,000.

28. At no time prior to the closing did any of the Defendants inform Ms. Kwolek of the fact

that a leaking fuel tank had once been buried in the yard of the Property, nor that it may have

been removed negligently and in a manner contrary to prevailing regulations, duties, and rules,

nor of the high probability that the soil of the Property had been contaminated with petroleum.

## MS. KWOLEK'S DISCOVERY OF CONTAMINATED SOIL
## AT THE PROPERTY

29. In late 2022, Ms. Kwolek was required to relocate to the State of Washington for work, obliging her to list the Property for sale on or about January 13, 2023.

30. During this subsequent inspection of the Property, evidence was found of a potential underground fuel storage tank in the yard, adjacent to the house.

31. Acting in good faith, Ms. Kwolek engaged an environmental services company named EnviroTech of Fairfield County, Inc. ("EnviroTech"), on or about February 8, 2023, to conduct an exploratory excavation in the vicinity of a suspected 275/550-gallon underground storage tank. A copy of the contract for this engagement is annexed hereto as **Exhibit D**.

32. While EnviroTech's exploratory excavation did not find an intact fuel tank, it did unearth evidence attributable to a leaking underground storage tank that was previously buried in the area.

33. During its exploratory excavation, EnviroTech also took soil and groundwater samples from the excavation area to analyze for potential Extractable Total Petroleum Hydrocarbons ("ETPH").

34. Both the soil and groundwater samples taken from the Property tested positive for Petroleum, with ETPH levels in excess of the threshold for mandatory remediation under the standards promulgated by the Connecticut Department of Energy & Environmental Protection (CTDEEP).

35. Despite neither causing the petroleum spill, nor having any forewarning that the seemingly pristine land she purchased was actually deeply polluted, Ms. Kwolek fulfilled her duty borne of the Defendants' negligence and deceit and entered into a Commercial Contaminated Soil Remediation Contract with EnviroTech on or about February 14, 2023, to

excavate, load, transport, and dispose of the contaminated soil and groundwater at the Property. A copy of this agreement is annexed hereto as **Exhibit E**.

36. Between February 21, 2023, and March 10, 2023, EnviroTech removed approximately 71.63 tons of contaminated soil and 1,975 gallons of contaminated water from the Property, which were subsequently transported to suitable disposal facilities.

37. Ms. Kwolek was forced to incur $39,433.85 in costs for EnviroTech's remediation of her Property.

38. Ms. Kwolek was additionally forced to expend $1,080 to retain Simon's Greenhouses Custom Landscaping to, among other things, "regrade construction zone," "reset stepping stones," "rake and seed," "put chopped straw down," and "put mulch on disturbed bed area," as a result of the soil disruption stemming from EnviroTech's excavation and remediation efforts.

39. Due to the discovery of contaminated soil at her Property and the stress of having to remediate significant environmental hazards, Ms. Kwolek suffered significant emotional distress, including, but not limited to depression, anxiety, fatigue, and difficulty focusing at work, eating, and sleeping.

**THE DEFENDANTS' NONDISCLOSURE OF THE FORMER LEAKING
UNDERGROUND STORAGE TANK**

40. In April 2023, Ms. Kwolek dispatched letters through undersigned counsel to Mr. Balisciano, Ms. Balisciano, and Coldwell, alerting them to the soil contamination at the Property and seeking reasonable reimbursement for the remediation costs associated therewith.

41. To her astonishment, Mr. Balisciano, Ms. Balisciano, and Coldwell rejected her overtures, claiming they bore absolutely no responsibility for Ms. Kwolek's plight.

42. In what appears to have been intended as exculpatory evidence, counsel for Ms.

Balisciano shared, among other things, a document dated December 7, 2017, entitled "Seller

Affirmation of in-ground Oil Tank Removal" (the "Affirmation"), which was **_not_** previously

provided to Ms. Kwolek. A copy of the Affirmation is annexed hereto as **Exhibit F**.

43. The Affirmation, which had been authored and signed by the prior homeowner,

Victor Gugliotti, in connection with his sale of the Property to Ms. Balisciano, stated:

> This averment from seller is to acknowledge that the in-ground oil
> tank located at 341 Amity Rd., Bethany was removed from the
> ground some 30+ years ago by the current owner Victor Guglietti
> [sic]. The tank was removed because of water leaking into the lines.
> Seller asserts the tank was not leaking when removed and no visible
> contaminant was left in the ground. ***There is no documentation of***
> ***the removal.*** Recent well water tests show no evidence of
> contaminants in the central well water supply servicing the 4
> surrounding homes or evidence of ground water contamination since
> the tank was removed over 30 years [sic] (emphasis added).

44. Notably, the Affirmation contains, in the upper-left hand corner, the initials "TB"

printed in brackets, establishing Taylor Balisciano's knowledge and acceptance of this document

and its contents.

45. The Affirmation plainly demonstrates that a leaking underground storage tank ("UST")

had once been buried in the yard of the Property, meaning that there was a virtual certainty that

petroleum had exfiltrated the UST and contaminated the surrounding soil.

46. Victor Gugliotti's admission in the Affirmation that "[t]here is no documentation of the

removal" indicates that the removal of the UST was likely conducted in a slipshod,

inappropriate, informal, or otherwise negligent fashion, which only magnifies the likelihood that

a significant volume of petroleum spilled from the UST and poisoned the nearby soil.

47. On information and belief, the Defendants never tested the soil of the Property for

petroleum contamination despite their knowledge of the leaking UST.

48. While the Defendants were under a clear duty to share the Affirmation with Ms. Kwolek

while she was contemplating purchasing the Property – and, at any rate, prior to the closing – the Defendants opted instead to withhold the Affirmation from Ms. Kwolek.

49. Coldwell conceded in writing that Mr. Balisciano and Coldwell had actual prior knowledge of the Affirmation before Ms. Kwolek purchased the Property and chose to withhold the Affirmation and its revelations from Ms. Kwolek.

50. The Defendants' knowledge of the Affirmation imputes that the Defendants were aware of the material risk of petroleum contamination at the Property prior to Ms. Kwolek's purchase of the same.

51. Neither Coldwell, or Mr. Balisciano, or Ms. Silverstein warned Ms. Kwolek of the material risk of petroleum contamination at the Property despite their legal duty to do so in their capacity as licensed real estate brokers.

52. Since Ms. Silverstein and Mr. Balisciano were both employed by Coldwell, Ms. Silverstein either knew or should have known of the Affirmation and the material risk of petroleum contamination at the Property and disclosed those material facts to Ms. Kwolek prior to her purchase of the same.

53. In addition, Ms. Silverstein failed to inform Ms. Kwolek of the material risk of petroleum contamination at the Property despite her statutory duty to do so in her capacity as Ms. Kwolek's real estate agent.

54. Instead, the Defendants conspired to and did successfully induce Ms. Kwolek to purchase the polluted Property by withholding the Affirmation and its contents from her until April 2023.

55. Indeed, Ms. Kwolek first learned of the Defendants' intentional deception after she was forced to expend significant sums of money to cure the otherwise known environmental hazard that she did not cause and that she had no knowledge of when she purchased the Property.

## COUNT I

### FRAUDULENT NONDISCLOSURE OF MATERIAL FACTS
**(Under the Connecticut Common Law)**

<u>(As against all Defendants)</u>

56. Ms. Kwolek repeats and realleges the allegations of paragraphs 1 through 55 as if fully set forth herein.

57. The former presence of a leaking UST at the Property and the resultant high likelihood of soil contamination thereat constitute material facts that the Defendants were under an affirmative duty to disclose during the negotiations for the purchase and sale of the Property.

58. The Defendants did not disclose the existence of the former leaking UST or the high likelihood of petroleum contamination at the Property until more than a year-and-a-half after Ms. Kwolek's purchase of the same.

59. The Defendants knew or should have known of the former leaking UST and the high risk of soil contamination at the Property before Ms. Kwolek's purchase of the same.

60. The Defendants purposefully withheld these material facts from Ms. Kwolek in order to induce Ms. Kwolek to enter into the Purchase Agreement, which she justifiably did.

61. Ms. Kwolek sustained significant damages because of the Defendants' fraudulent nondisclosure of these material facts in connection with her purchase of the Property, including, but not limited to the steep cost of remediating the petroleum spillage at the Property.

## COUNT II

### VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT
**(Under C.G.S.A. § 42-110b)**

<u>(As against Frank Balisciano and Coldwell)</u>

62. Ms. Kwolek repeats and realleges the allegations of paragraphs 1 through 61 as if

fully set forth herein.

63. At all times relevant to this Complaint, Mr. Balisciano and Coldwell were licensed real estate brokers in the regular business of, *inter alia*, representing sellers in real estate transactions in the State of Connecticut.

64. At all times relevant to this Complaint, Mr. Balisciano and Coldwell represented Ms. Balisciano in connection with her sale of the Property to Ms. Kwolek.

65. Mr. Balisciano and Coldwell had a duty to prospective purchasers of the Property, like Ms. Kwolek, to apprise them of material facts concerning the Property.

66. The former existence of a leaking UST at the Property, together with the high likelihood that the soil of the Property had been tainted with petroleum, constitute material facts that Mr. Balisciano and Coldwell were obligated to disclose to Ms. Kwolek under prevailing Connecticut law.

67. By their own admission, Mr. Balisciano and Coldwell had actual prior knowledge of the foregoing material facts.

68. Mr. Balisciano and Coldwell purposefully and deceptively withheld the foregoing material facts from Ms. Kwolek to induce her to purchase the Property.

69. As a result of Mr. Balisciano and Coldwell's unfair concealment of these material facts from Ms. Kwolek, she purchased the Property from Ms. Balisciano, and was subsequently damaged through, *inter alia*, her expenditure of tens of thousands of dollars to remediate a petroleum spill that had purposefully been kept hidden from her by Mr. Balisciano and Coldwell.

## COUNT III

## VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT
### (Under C.G.S.A. § 42-110b)

### (As against Nancy Silverstein and Coldwell)

70. Ms. Kwolek repeats and realleges the allegations of paragraphs 1 through 69 as if fully set forth herein.

71. At all times relevant to this Complaint, Ms. Silverstein and Coldwell were licensed real estate brokers in the regular business of, *inter alia*, representing buyers in real estate transactions in the State of Connecticut.

72. Between August 7, 2021, and September 15, 2021 – the date of the closing for the Property – Coldwell represented Ms. Kwolek as a "dual agent" in connection with her purchase of the Property.

73. At all times relevant to this Complaint, Ms. Silverstein represented Ms. Kwolek as her real estate agent in connection with her purchase of the Property.

74. As the real estate agents for Ms. Kwolek, Ms. Silverstein and Coldwell had a duty to Ms. Kwolek to warn her of material facts concerning the Property prior to her purchase of the same.

75. The former presence of a leaking UST at the Property, together with the high likelihood that the soil of the Property had been tainted with petroleum, constitute material facts that Ms. Silverstein and Coldwell were obligated to disclose to Ms. Kwolek under prevailing Connecticut law.

76. Coldwell had actual prior knowledge of the foregoing material facts before Ms. Kwolek purchased the Property.

77. Ms. Silverstein had or should have had actual prior knowledge of the foregoing material facts before Ms. Kwolek purchased the Property.

12

78. Ms. Silverstein and Coldwell purposefully and deceptively withheld the foregoing material facts from Ms. Kwolek to induce her to purchase the Property.

79. As a result of Ms. Silverstein's and Coldwell's patently unfair and deceptive concealment of these material facts from Ms. Kwolek, she purchased the Property from Ms. Balisciano, and was subsequently damaged through, *inter alia*, her expenditure of tens of thousands of dollars to remediate a petroleum spill that had purposefully been kept hidden from her by the Defendants.

## COUNT IV

### Concealment of Material Facts in Violation of § 20-328-5a of the Regulations of Connecticut State Agencies and § 20-320(1) of Connecticut General Statutes Annotated

(As against Coldwell, Nancy Silverstein, and Frank Balisciano)

80. Ms. Kwolek repeats and realleges the allegations of paragraphs 1 through 79 as if fully set forth herein.

81. At all times relevant to this Complaint, Mr. Balisciano, Ms. Silverstein, and Coldwell were licensed real estate brokers in the regular business of, *inter alia*, representing buyers and sellers in real estate transactions in the State of Connecticut.

82. At all times relevant to this Complaint, Mr. Balisciano, Ms. Silverstein, and Coldwell were "licensees" within the meaning of § 20-328-1a(d) of the Regulations of Connecticut State Agencies.

83. At all times relevant to this Complaint, Mr. Balisciano and Coldwell represented Ms. Balisciano in connection with her sale of the Property to Ms. Kwolek.

84. At all times relevant to this Complaint, Ms. Silverstein and Coldwell represented Ms. Kwolek in connection with her purchase of the Property from Ms. Balisciano.

85. As the real estate agents for Ms. Balisciano, Mr. Balisciano and Coldwell had a duty to

prospective purchasers of the Property, like Ms. Kwolek, to apprise them of material facts under Section 20-328-5a of the Regulations of Connecticut State Agencies and Section 20-320 of the Connecticut General Statutes Annotated.

86. As the real estate agents for Ms. Kwolek, Ms. Silverstein and Coldwell had a duty to Ms. Kwolek to apprise her of material facts under Section 20-328-5a of the Regulations of Connecticut State Agencies and Section 20-320 of the Connecticut General Statutes Annotated.

87. The former presence of a leaking UST at the Property, together with the high likelihood that the soil of the Property had been tainted with petroleum, constitute material facts that Mr. Balisciano and Coldwell were obligated to disclose to Ms. Kwolek.

88. By their own admission, Mr. Balisciano and Coldwell had actual prior knowledge of the foregoing material facts.

89. Mr. Balisciano, Ms. Silverstein, and Coldwell purposefully and deceptively withheld the foregoing material facts from Ms. Kwolek to induce her to purchase the Property.

90. As a result of Mr. Balisciano, Ms. Silverstein, and Coldwell's concealment of these material facts from Ms. Kwolek, she purchased the Property from Ms. Balisciano.

91. As a result of Mr. Balisciano, Ms. Silverstein, and Coldwell's dishonest concealment of these material facts from Ms. Kwolek, Ms. Kwolek was subsequently damaged through, *inter alia*, her expenditure of tens of thousands of dollars to remediate the petroleum spillage from the UST.

## COUNT V

### BREACH OF FIDUCIARY DUTY
### (Under the Connecticut Common Law)

#### (As against Ms. Silverstein and Coldwell)

92. Ms. Kwolek repeats and realleges the allegations of paragraphs 1 through 91 as if

14

fully set forth herein.

93. Ms. Silverstein owed a fiduciary duty to Ms. Kwolek in connection with her purchase of the Property pursuant to the Dual Agency Agreement.

94. Coldwell owed a fiduciary duty to Ms. Kwolek in connection with her purchase of the Property in Coldwell's capacity as her Designated Agency and as a "Dual Agent" pursuant to the Dual Agency Agreement.

95. Ms. Silverstein and Coldwell's fiduciary duties to Ms. Kwolek included, but were not limited to duties of loyalty, honesty, disclosure, reasonable care, accountability, and obedience to lawful instructions.

96. Ms. Silverstein and Coldwell were under a legal duty to disclose known material facts about the Property to Ms. Kwolek pursuant to both the terms of the Dual Agency Agreement and Section 20-328-5a of the Regulations of Connecticut State Agencies.

97. Ms. Silverstein and Coldwell breached their fiduciary duty to Ms. Kwolek through their failure to disclose known material facts bearing on Ms. Kwolek's purchase of the Property, namely, the former presence of a leaking UST at the Property and the concomitant high likelihood of petroleum contamination at the Property.

98. As a result of Ms. Silverstein and Coldwell's breach of their fiduciary duty to Ms. Kwolek, Ms. Kwolek sustained significant monetary damages from, *inter alia*, the expense of remediating the petroleum spillage at the Property.

## COUNT VI

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Under the Connecticut Common Law)

### (As against Ms. Silverstein and Coldwell)

99. Ms. Kwolek repeats and realleges the allegations of paragraphs 1 through 98 as if

fully set forth herein.

100. At all times relevant to this Complaint, Ms. Silverstein and Coldwell were licensed real estate brokers in the regular business of, *inter alia*, representing buyers and sellers in real estate transactions in the State of Connecticut.

101. On August 7, 2021, Ms. Kwolek entered into a Dual Agency Agreement with Coldwell and Ms. Silverstein pursuant to which Coldwell and Ms. Silverstein agreed to represent Ms. Kwolek as her real estate agents in connection with her purchase of the Property.

102. At all times relevant to this Complaint, Coldwell and Ms. Silverstein were "licensees" within the meaning of § 20-328-1a(d) of the Regulations of Connecticut State Agencies.

103. As the real estate agents for Ms. Kwolek, Ms. Silverstein and Coldwell had a duty to act in the utmost good faith toward Ms. Kwolek.

104. As part of Ms. Silverstein and Coldwell's obligation of good faith and fair dealing stemming from the Dual Agency Agreement, Coldwell and Ms. Silverstein were required to make a full, fair, and prompt disclosure to Ms. Kwolek of all facts that were or might be material in connection with Ms. Kwolek's purchase of the Property.

105. The former presence of a leaking UST at the Property, together with the high likelihood that the soil of the Property had been contaminated with petroleum, constitute material facts that Coldwell and Ms. Silverstein were obligated to disclose to Ms. Kwolek.

106. By its own admission, Coldwell had actual prior knowledge of the foregoing material facts.

107. Ms. Silverstein either knew or should have known of the foregoing material facts in her capacity as a Coldwell employee and as Ms. Kwolek's real estate agent.

108. Coldwell and Ms. Silverstein purposefully, unfairly, and in bad faith withheld the

foregoing material facts from Ms. Kwolek to induce her to purchase the Property.

109. As a result of Ms. Silverstein and Coldwell's concealment of these material facts from Ms. Kwolek, Ms. Kwolek purchased the Property from Ms. Balisciano on September 15, 2021.

110. As a result of Ms. Silverstein and Coldwell's concealment of these material facts from Ms. Kwolek, Ms. Kwolek was subsequently damaged through, *inter alia*, her expenditure of tens of thousands of dollars to remediate the petroleum spillage from the UST.

## COUNT VII

## BREACH OF CONTRACT
**(Under the Connecticut Common Law)**

### (As against Ms. Silverstein and Coldwell)

111. Ms. Kwolek repeats and realleges the allegations of paragraphs 1 through 110 as if fully set forth herein.

112. At all times relevant to this Complaint, Coldwell and Ms. Silverstein were licensed real estate brokers in the regular business of, *inter alia*, representing buyers and sellers in real estate transactions in the State of Connecticut.

113. On August 7, 2021, Ms. Kwolek entered into a Dual Agency Agreement with Ms. Silverstein and Coldwell pursuant to which Ms. Silverstein and Coldwell would represent Ms. Kwolek in connection with her purchase of the Property.

114. Pursuant to the Dual Agency Agreement, Coldwell represented Ms. Kwolek as a "dual agent" in connection with her purchase of the Property.

115. Pursuant to the Dual Agency Agreement, Coldwell was required to "act in a fiduciary capacity for both Buyer and Seller."

116. Pursuant to the Dual Agency Agreement, Ms. Silverstein agreed to represent Ms. Kwolek as Ms. Kwolek's real estate agent.

117. As the real estate agents for Ms. Kwolek, Ms. Silverstein and Coldwell had a duty to their client, Ms. Kwolek, to apprise her of material facts under Section 20-328-5a of the Regulations of Connecticut State Agencies and Section 20-320 of the Connecticut General Statutes Annotated.

118. The former presence of a leaking UST at the Property, together with the high likelihood that the soil of the Property had been tainted with petroleum, constitute material facts that Ms. Silverstein and Coldwell were obligated to disclose to Ms. Kwolek.

119. By its own admission, Coldwell had actual prior knowledge of the foregoing material facts.

120. Ms. Silverstein either knew or should have known of the foregoing material facts in her capacity as a Coldwell employee.

121. Ms. Silverstein and Coldwell breached the Dual Agency Agreement by purposefully withholding and failing to disclose the foregoing material facts from Ms. Kwolek to induce her to purchase the Property.

122. As a result of Ms. Silverstein and Coldwell's nondisclosure of these material facts to Ms. Kwolek, Ms. Kwolek purchased the Property from Ms. Balisciano on September 15, 2021.

123. As a result of Ms. Silverstein and Coldwell's concealment of these material facts from Ms. Kwolek, Ms. Kwolek was subsequently damaged through, *inter alia*, her expenditure of tens of thousands of dollars to remediate the petroleum spillage from the UST.

## COUNT VIII

### PROFESSIONAL NEGLIGENCE
### (Under the Connecticut Common Law)

#### (As against Coldwell, Mr. Balisciano, and Ms. Silverstein)

124. Ms. Kwolek repeats and realleges the allegations of paragraphs 1 through 123 as

if fully set forth herein.

125.  At all times relevant to this Complaint, Coldwell, Mr. Balisciano, and Ms. Silverstein were licensed real estate brokers in the regular business of, *inter alia*, representing buyers and sellers in real estate transactions in the State of Connecticut.

126.  As the real estate agent for Ms. Balisciano, Mr. Balisciano and Coldwell had a duty to conform to a reasonable standard of care in connection with their representation of Ms. Balisciano concerning her sale of the Property.

127.  On August 7, 2021, Ms. Kwolek entered into a Dual Agency Agreement with Coldwell and Ms. Silverstein pursuant to which they would represent Ms. Kwolek in connection with her purchase of the Property.

128.  As the real estate agents for Ms. Kwolek, Coldwell and Ms. Silverstein had a duty to conform to a reasonable standard of care in connection with their representation of Ms. Kwolek concerning her purchase of the Property.

129.  As part of that duty, Coldwell, Mr. Balisciano, and Ms. Silverstein were obligated to apprise Ms. Kwolek of material facts concerning the Property under Section 20-328-5a of the Regulations of Connecticut State Agencies and Section 20-320 of the Connecticut General Statutes Annotated.

130.  The former presence of a leaking underground storage tank at the Property, together with the high likelihood that the soil of the Property had been tainted with petroleum, constitute material facts that Coldwell, Mr. Balisciano, and Ms. Silverstein were obligated to disclose to Ms. Kwolek.

131.  By its own admission, Mr. Balisciano and Coldwell had actual prior knowledge of the foregoing material facts.

132. Ms. Silverstein either knew of the foregoing material facts or breached her duty of reasonable care to Ms. Kwolek in failing to learn the foregoing material facts prior to Ms. Kwolek's purchase of the Property.

133. Coldwell, Mr. Balisciano, and Ms. Silverstein breached the Dual Agency Agreement by failing to disclose the foregoing material facts from Ms. Kwolek before she purchased the Property.

134. In so doing, Coldwell, Mr. Balisciano, and Ms. Silverstein failed to exercise the same degree of care as a reasonably prudent real estate professional would have exercised when aware of such material facts bearing on the Property.

135. As a result of Coldwell, Mr. Balisciano, and Ms. Silverstein's nondisclosure of these material facts to Ms. Kwolek, she purchased the Property from Ms. Balisciano on September 15, 2021.

136. As a result of Coldwell, Mr. Balisciano, and Ms. Silverstein's concealment of these material facts from Ms. Kwolek, Ms. Kwolek was subsequently damaged through, *inter alia*, her expenditure of tens of thousands of dollars to remediate the petroleum spillage from the UST.

## COUNT IX

### CIVIL CONSPIRACY
### (Under the Connecticut Common Law)

#### (As against all Defendants)

137. Ms. Kwolek repeats and realleges the allegations of paragraphs 1 through 136 as if fully set forth herein.

138. At all times relevant to this Complaint, the Defendants had actual prior knowledge of the former presence of a leaking UST at the Property and the resultant high likelihood of petroleum contamination threat.

139. The Defendants purposefully and unlawfully withheld the foregoing material facts from Ms. Kwolek during her negotiations to purchase the Property.

140. The Defendants' failure to disclose the foregoing material facts to Ms. Kwolek are violations of, *inter alia*, Section 20-328-5a of the Regulations of Connecticut State Agencies and Section 20-320 of the Connecticut General Statutes Annotated.

141. The Defendants did not disclose the former leaking UST or the high likelihood of hidden environmental hazards at the Property until more than a year-and-a-half after Ms. Kwolek's purchase of the same.

142. The Defendants purposefully withheld these material facts from Ms. Kwolek in order to induce Ms. Kwolek to enter into the Purchase Agreement for the purchase and sale of the Property, which she justifiably did.

143. Ms. Kwolek has sustained significant damages because of the Defendants' conspiracy to conceal these material facts in connection with her purchase of the Property, including, but not limited to the steep cost of remediating the petroleum spillage at the Property.

## COUNT X

## FRAUDULENT PREVENTION OF INQUIRY
### (Under the Connecticut Common Law)

### (As against all Defendants)

144. Ms. Kwolek repeats and realleges the allegations of paragraphs 1 through 143 as if fully set forth herein.

145. At all times relevant to this Complaint, the Defendants were engaged in efforts to sell the Property to prospective purchasers.

146. At all times relevant to this Complaint, the Defendants were aware of the former leaking UST and the high likelihood of petroleum contamination in the soil of the Property.

21

147. The existence of a former leaking UST and the high likelihood of petroleum contamination in the soil of the Property constitute material facts that mandated disclosure under prevailing Connecticut law.

148. The Defendants deliberately hid these material facts from Ms. Kwolek in order to prevent, thwart, or forestall her inquiry into the nature and extent of the petroleum contamination at the Property.

149. In so doing, the Defendants prevented Ms. Kwolek from arranging for a metal detector search of the Property for the formerly buried UST and for samples to be taken of the soil and groundwater of the Property to assess the magnitude of the petroleum contamination thereat.

150. As a result of the Defendants' deliberate concealment of the foregoing material facts, Ms. Kwolek was unable to inquire further into the nature of the environmental hazards at the Property, purchased the Property, and sustained significant damages through, *inter alia*, the expenses she incurred through remediating the same.

## COUNT XI

## BREACH OF CONTRACT
### (Under the Connecticut Common Law)

### (As against all Defendants)

151. Ms. Kwolek repeats and realleges the allegations of paragraphs 1 through 150 as if fully set forth herein.

152. The Purchase Agreement did not disclose the material probability that the Property was contaminated with petroleum.

153. When Ms. Kwolek entered into the Purchase Agreement on August 8, 2021, Ms.

Kwolek did so in reliance on the Defendants' failure to disclose any material facts affecting the Property, including, but not limited to the high probability that the Property was contaminated with petroleum.

154. The Defendants had a legal duty to disclose material facts concerning the Property to Ms. Kwolek but failed to do so, in breach of the Purchase Agreement.

155. As a result of the Defendants' failure to disclose such material facts, Ms. Kwolek justifiably entered into the Purchase Agreement.

156. As a result of the Defendants' concealment of these material facts from Ms. Kwolek, Ms. Kwolek was subsequently damaged through, *inter alia*, her expenditure of tens of thousands of dollars to remediate the petroleum spillage from the UST.

## COUNT XII

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
**(Under the Connecticut Common Law)**

#### (As against all Defendants)

157. Ms. Kwolek repeats and realleges the allegations of paragraphs 1 through 156 as if fully set forth herein.

158. At all times relevant to this Complaint, the Defendants had actual prior knowledge of the former presence of a leaking UST at the Property and the resultant high likelihood of petroleum contamination threat.

159. The Defendants purposefully and unlawfully withheld the foregoing material facts from Ms. Kwolek during her negotiations with Ms. Balisciano to purchase the Property.

160. In failing to inform a prospective purchaser of the Property, like Ms. Kwolek, of the high risk of petroleum contamination at the Property, the Defendants created an unreasonable risk of causing Ms. Kwolek emotional distress.

161.  It was foreseeable that Ms. Kwolek would suffer emotional distress upon discovering that the seemingly pristine Property she purchased was, in fact, heavily polluted with petroleum.

162.  The emotional distress engendered by the Defendants' concealment of the high risk of petroleum contamination at the Property was severe enough that it caused Ms. Kwolek to suffer anxiety and depression, among other harmful symptoms, and put Ms. Kwolek at risk of illness and bodily harm.

**WHEREFORE,** Ms. Kwolek prays that this Court enters an Order and Judgment holding, finding, and directing:

A.      that Defendants' intentional acts complained of herein constitute fraudulent nondisclosure of material facts under the common laws of the State of Connecticut; and

B.      that Defendants Coldwell, Mr. Balisciano, and Ms. Silverstein willfully violated the Connecticut Unfair Trade Practices Act; and

C.      that Defendants compensate Ms. Kwolek for all of her actual costs associated with the remediation of the Property; and

D.      that Defendants compensate Ms. Kwolek for her pain and suffering stemming from their unlawful nondisclosure of material facts; and

E.      that Ms. Kwolek be awarded compensatory damages in an amount this Court shall consider to be reasonable and fair;

F.      that Ms. Kwolek be awarded reasonable attorneys' fees and costs; and

G.      that Defendants pay exemplary or punitive damages to Ms. Kwolek due to their willful and intentional acts in violation of, *inter alia*, their duty to abstain from deceptive and dishonest trade practices in connection with their representation of buyers and sellers of real property; and

H.      such other and further relief as the Court deems proper.

Dated: August 9, 2023                           Respectfully submitted,


                                                **GILBRIDE, TUSA LAST & SPELLANE LLC**

                                                *Attorneys for Plaintiffs*


                                                By:_____
                                                    Todd S. Sharinn
                                                    1011 High Ridge Road, Suite 305
                                                    Stamford, CT 06905
                                                    Telephone: (203) 542-8418
                                                    tss@gtlslaw.com