**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| GEMMA KWOLEK, | : | CIVIL CASE NO. |
|     Plaintiff, | : | 3:23-CV-01065(JCH) |
| | : | |
| v. | : | |
| | : | |
| NRT NEW ENGLAND LLC d/b/a, | : | NOVEMBER 3, 2023 |
| COLDWELL BANKER REALTY, | : | |
| FRANK BALISCIANO, | : | |
| NANCY SILVERSTEIN, | : | |
| And TAYLOR BALISCIANO, | : | |
|     Defendants. | : | |

**RULING ON MOTION TO DISMISS (DOC. NO. 17)**
**AND MOTION TO STRIKE (DOC. NO. 25)**

**I.     INTRODUCTION**

Plaintiff Gemma Kwolek ("Ms. Kwolek") brings this action against NRT New England LLC d/b/a Coldwell Banker Realty ("Coldwell"), Frank Balisciano ("Mr. Balisciano"), Nancy Silverstein ("Ms. Silverstein"), and Taylor Balisciano ("Ms. Balisciano"), asserting claims arising out of an alleged material defect in property purchased from Ms. Balisciano.  See Complaint ("Compl.") (Doc. No. 1).  Ms. Kwolek alleges violations of Conn. Gen. Stat. §§ 42-110a et seq. ("Connecticut Unfair Trade Practices Act" or "CUTPA"), concealment of material facts in violation of Conn. Agencies Regs. § 20-328-5a and Conn. Gen. Stat. § 20-320, fraudulent nondisclosure of material facts, breach of fiduciary duties, breach of implied covenant of good faith and fair dealing, civil conspiracy, fraudulent prevention of inquiry, professional negligence, breach of contract, and negligent infliction of emotional distress.  Id.

1

Before this court is a Motion to Dismiss for lack of subject matter jurisdiction filed by Coldwell, Mr. Balisciano, and Ms. Silverstein (collectively "Coldwell defendants"). Motion to Dismiss ("Mot. to Dismiss") (Doc. No. 17); Memorandum of Law in Support of Mot. to Dismiss ("Mem.") (Doc. No. 18); Reply to Plaintiff's Opposition to Mot. to Dismiss ("Reply") (Doc. No. 23). Plaintiff opposes this Motion and moves to strike the Coldwell defendants' Reply brief for raising new legal arguments for the first time. Opposition to Mot. to Dismiss ("Opp.") (Doc. No. 22); Motion to Strike ("Mot. to Strike") (Doc. No. 25).

For the reasons set forth below, the court denies the Motion to Dismiss and denies the Motion to Strike as moot.

## II.    BACKGROUND

### A.    Alleged Facts

This action was commenced by Ms. Kwolek following her discovery of contaminated soil on property she purchased from Ms. Balisciano. See Compl. at ¶¶ 30-34. The court provides a summary of the well-pleaded factual allegations presented in Ms. Kwolek's Complaint.

Ms. Kwolek purchased a home located at 341 Amity Road, Bethany, Connecticut from Ms. Balisciano under a Dual Agency/Designated Agency Disclosure Notice and Consent Agreement with Coldwell. Id. at ¶ 15. Under this contract, Ms. Silverstein and Mr. Balisciano, both Coldwell real estate agents, represented Ms. Kwolek and Ms. Balisciano, respectively. Id. at ¶ 16.

In August 2021, Ms. Balisciano completed a form titled "Residential Property Condition Report for the Property" as required by Connecticut law, in which she wrote "Not Applicable" or "N/A" to a question asking if she was aware of any problems with the underground storage tank. See id. at ¶¶ 21-22. Neither Mr. Balisciano nor any other

Coldwell employee corrected this representation and, prior to closing, none of the defendants informed Ms. Kwolek that a fuel tank had previously been located under the property's lawn.  Id. at ¶¶ 23, 28.

On or about August 8, 2021, Ms. Kwolek signed a Real Estate Purchase and Sales Agreement, which contained no references to or disclosures of facts material to the action.  Id. at ¶ 25.  On September 15, 2021, Ms. Kwolek closed on the home.  Id. at ¶ 27.

In late 2022, Ms. Kwolek listed the property for sale.  Id. at ¶ 29.  During this time, Ms. Kwolek found evidence of a potential underground fuel storage tank.  Id. at ¶ 30.  On or about February 8, 2023, Ms. Kwolek subsequently contracted with EnviroTech of Fairfield County, Inc. ("EnviroTech"), an environmental services company, to conduct an exploratory excavation.  Id. at ¶ 31.  EnviroTech did not unearth an intact tank but did find that the soil and groundwater was contaminated with Petroleum, evidence supporting a finding that a fuel tank had previously been located beneath the yard.  Id. at ¶¶ 32-35.  The levels of ETPH in the soil required remediation.  Id. at ¶ 34.

On or about February 14, 2023, Ms. Kwolek entered into another contract with EnviroTech to "excavate, load, transport, and dispose of the contaminated soil and groundwater".  Id. at ¶ 35.  "EnviroTech removed approximately 71.63 tons of contaminated soil and 1,975 gallons of contaminated water".  Id. at ¶ 36.  As a result of EnviroTech's excavation and remediation efforts, Ms. Kwolek "retain[ed] Simon's Greenhouses Custom Landscaping to, among other things, 'regrade construction zone,' 'reset stepping stones,' 'rake and seed,' 'put chopped straw down,' and 'put mulch on

disturbed bed area'".  Id. at ¶ 38.  In total, Ms. Kwolek incurred $39,433.85 in

remediation costs and $1,080 in landscaping costs.  Id. at ¶¶ 37-38.

In April 2023, Ms. Kwolek informed Coldwell and the Baliscianos about the soil

contamination and sought reimbursement for the remediation costs.  Id. at ¶ 40.  In

response, they "claim[ed] they bore absolutely no responsibility" and, also, shared a

document titled "Seller Affirmation of in-ground Oil Tank Removal" that was executed by

the previous homeowner, Victor Gugliotti ("Mr. Gugliotti"), and initialed by Ms.

Balisciano.  Id. at ¶¶ 41-44.  The document disclosed that Mr. Gugliotti had removed the

oil tank due to water leaking into the lines and further represented that there was no

documentation of the removal.  Id. at ¶ 43.  Coldwell and the Baliscianos did not share

this document or make Ms. Kwolek aware of it prior to her purchase of the home.  See

id. at ¶¶ 48-53.

B.    Procedural History

On August 9, 2023, Ms. Kwolek filed her Complaint against the defendants.  See

Compl. (Doc. No. 1).  On September 6, 2023, the Coldwell defendants filed their Motion

to Dismiss for lack of subject matter jurisdiction.  See Mot. to Dismiss (Doc. No. 17);

Mem. (Doc. No. 18).  On September 7, 2023, Ms. Balisciano separately filed her

Answer to Ms. Kwolek's Complaint.  See Answer (Doc. No. 6).

On September 27, 2023, Ms. Kwolek filed her Opposition to the Motion to

Dismiss.  See Opp. (Doc. No. 22).  On October 5, 2023, the Coldwell defendants flied

their Reply to Ms. Kwolek's Opposition.  See Reply (Doc. No. 23); Affidavit of Att'y

Crosby (Doc. No. 24).  In response to an argument raised for the first time in the

Coldwell defendants' Reply, Ms. Kwolek filed a Motion to Strike, requesting that the

court strike these newly minted arguments or, in the alternative, grant Ms. Kwolek leave to file a sur-reply.  See Mot. to Strike (Doc. No. 25).

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  A plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence.  Id.  When determining whether to dismiss for lack of subject matter jurisdiction, a court may "consider[] evidence outside the pleadings."  See Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011).  A court also "has discretion to hold a hearing to resolve factual disputes that bear on the court's jurisdiction."  Saleh v. Sulka Trading, 957 F.3d 348, 353 (2d Cir. 2020).  However, a court must otherwise "accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor."  Id.

## IV.    DISCUSSION

### A.    Motion to Dismiss

The Coldwell defendants move to dismiss for failing to allege sufficient facts to establish the threshold controversy required for diversity jurisdiction under section 1332 of title 28.  Mem. at 1.  In response, Ms. Kwolek counters that the Coldwell defendants have not, as an initial matter, met their burden, and further, have failed to consider all the claims in the Complaint when calculating possible damages.  See Opp. at 3, 7-8.

A civil action brought pursuant to section 1332 of title 28 requires complete diversity among parties and an amount in controversy in excess of $75,000.  28 U.S.C.

§ 1332(a).  There is "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy."  Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 397 (2d Cir. 2003) (quoting Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999)); Washington Nat'l Ins. Co. v. OBEX Grp., LLC, 958 F.3d 126, 135 (2d Cir. 2020) ("[t]he sum claimed by the [petitioner] controls if the claim is apparently made in good faith" (internal quotation marks omitted) (quoting A.F.A. Tours, Inc. v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991))).  Under this presumption, the plaintiff need only show that there is a "reasonable probability" that the action exceeds this jurisdictional threshold. Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994). However, the plaintiff need not allege a specific number to meet the threshold.  See Correspondent Servs. Corp. v. First Equities Corp. of Florida, 442 F.3d 767, 769 (2d Cir. 2018) ("the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested" (quoting Kheel v. Port of New York. Auth., 457 F.2d 46, 49 (2d Cir. 1972))); cf. Wright v. Musanti, 887 F.3d 577, 585 (2d Cir. 2006) ("failure to allege facts establishing jurisdiction need not prove fatal to a complaint" (internal citation omitted)). When a plaintiff does not, as here, plead specific amounts of damages to meet the jurisdictional amount, the court may evaluate the potential value of each claim presented.  See Suarez v. Mosaic Sales Solutions US Operating Co., LLC, 720 F. App'x 52, 53-55 (2d Cir. 2018).

The party opposing jurisdiction has a much higher burden.  Scherer, 347 F.3d at 397.

> To overcome the face-of-the-complaint presumption, the party opposing
> jurisdiction, must show to a legal certainty that the amount recoverable does not
> meet the jurisdictional threshold.  Our cases have set a high bar for overcoming
> this presumption.  [T]he legal impossibility of recovery must be so certain as
> virtually to negative the plaintiff's good faith in asserting the claim.  [E]ven where
> [the allegations leave grave doubt about the likelihood of a recovery of the
> requisite amount, dismissal is not warranted.

Id. (alterations in original) (internal citations and quotations omitted); see also

Washington Nat'l Ins. Co. v. OBEX Grp., LLC, 958 F.3d 126, 135 (2d Cir. 2020) ("It

must appear to a legal certainty that the claim is really for less than the jurisdictional

amount to justify the dismissal."  (internal quotation marks omitted) (quoting A.F.A.

Tours, Inc. v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991))).  Furthermore, doubts

regarding the likelihood of recovery of the threshold amount should be resolved in favor

of the plaintiff.  See Pyskaty v. Wide World of Cars, LLC, 856 F.3d 216, 229 (2d Cir.

2017).

In the case at bar, Ms. Kwolek explicitly alleges that remediation and restoration

of the property cost her $39,433.85 and $1,080, respectively.  See Compl. at ¶¶ 37-38.

Based on the sum of these two figures, $40,513.85, the Coldwell defendants contend

Ms. Kwolek has failed to satisfy her burden.  Mem. at 4.  They further argue that the

court cannot consider possible punitive damages or attorney's fees in determining

whether the amount in controversy exceeds $75,000.  Id. at 4-8.  In response, Ms.

Kwolek counters that punitive damages can be considered if recoverable under the

applicable law and that the defendants failed to consider damages in connection with

the negligent infliction of emotional distress claim.  See Opp. at 4-5.

1.      Punitive Damages and Legal Fees

In addition to actual damages of $40,513.85 relating to her property, Ms. Kwolek requests compensatory and exemplary or punitive damages as well as attorneys' fees and costs.  Compl. at 24.

Attorneys' fees, if recoverable as a matter of right, may be used to satisfy the amount in controversy.  See Kimm v. KCC Trading, Inc., 449 F. App'x 85, 85-86 (2d Cir. 2012).  Punitive damages can also be considered to determine whether the plaintiff has met the jurisdictional threshold if the controlling law permits their recovery.  Nwanza .v. Time, Inc., 125 F. App'x 346, 348-49 (2d Cir. 2005); Whitchurch, 937 F.2d at 87.

In Connecticut, attorney's fees are not recoverable unless permitted by statute or contract.  See Aurora Loan Servs., LLC v. Hirsch, 170 Conn. App. 439, 453.  Ms. Kwolek makes claims under CUTPA, which permits an award of attorney's fees.  Conn. Gen. Stat. § 42-110g(a); see Stone v. East Coast Swappers, LLC, 337 Conn. 589, 606-09 (2020).  However, because the decision to award such fees under CUTPA is within the court's discretion, id., attorney's fees are not a matter of right and consequently, are not to be considered in the amount in controversy calculation,  see Howard v. Anthem, Inc., 638 F. Supp. 3d 133, 139-140 (D. Conn. 2022); see also Pyskaty, 856 F.3d at 224 n. 14.

Nonetheless, Ms. Kwolek can avail herself of punitive damages under CUTPA in calculating the amount in controversy.  Unlike the Connecticut common law rule, CUTPA permits recovery of punitive damages separate and apart from attorney's fees. Ulbrich v. Groth, 310 Conn. 375, 448-49 (2013); Stone v. East Coast Swappers, LLC, 337 Conn. 589, 602-05 (2020).  The standard for determining punitive damages under CUTPA is whether the defendants manifested a "reckless indifference to the rights of

others or an intentional and wanton violation of those rights." <u>Russo v. Thornton</u>, No. X08FSTCV156025330, 2020 WL 6712453, at *5 (Conn. Sup. Ct. May 21, 2020) (quoting <u>Ulbrich</u>, 310 Conn. at 446). Ms. Kwolek alleges that the Coldwell defendants had prior knowledge of the alleged property defect and that they "purposefully and deceptively withheld material facts from [her] to induce her to purchase the Property."[1] Compl. at 11 ¶¶ 67-68, 12 ¶¶ 76-78. As such, Ms. Kwolek has pleaded a basis for punitive damages, permitting the court to consider possible punitive damages in determining whether the pleadings satisfy the amount in controversy. <u>Accord</u> <u>Suarez v. Mosaic Sales Sols. US Operating Co. LLC</u>, 720 F. App'x 52, 54-55 (2d Cir. 2018).

Punitive or exemplary damages under CUTPA can be equal to or based on a multiple of actual damages. <u>See</u> <u>Ulbrich</u>, 310 Conn. at 453-54 (declining to place a cap on punitive damages under CUTPA corresponding to a one-to-one ratio of punitive to compensatory damages); <u>Staehle v. Michael's Garage, Inc.</u>, 35 Conn. App. 455, 463 (1994) (finding that awarding punitive damages equal to actual damages is a recognized method of calculating punitive damages under CUTPA); <u>Votto v. Am. Car</u>

---

[1] Moreover, Ms. Kwolek's assertions of, <u>inter alia</u>, fraudulent nondisclosure of material facts against all defendants in Count One, Compl. at 10, breach of fiduciary duty against Coldwell and Ms. Silverstein in Count Five, <u>id.</u> at 14, breach of the implied covenant of good faith and fair dealing against Ms. Silverstein and Coldwell, <u>id.</u> at 15, provide further support that the pleadings establish a reasonable probability of recovery of punitive damages under CUTPA. <u>Accord</u> <u>Larobina v. Home Depot, USA, Inc.</u>, 76 Conn. App. 586, 588 n.2 (2003) (discussing that among the well-settled criteria for determining whether a practice is unfair, such that it may constitute a CUTPA violation, is "[w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of fairness" (quoting <u>Murray v. Taylor</u>, 65 Conn. App. 300, 337, cert. denied, 258 Conn. 928 (2001))); <u>Russo</u>, 2020 WL 6712453, at *5 ("Initially, the jury's finding of breach of fiduciary duty, civil theft and tortious interference with contractual or business relations, which are intentional torts, as well as an award of common-law punitive damages under the conversion count, clearly support the conclusion that Brett's actions demonstrated a 'reckless indifference to the rights of others or an intentional and wanton violation of those rights.'").

Rental, Inc., 273 Conn. 478, 486 (2005) (affirming punitive damage award equal to three times the compensatory damage award).  The Coldwell defendants have not argued that there would be no basis for a punitive damage award that would equal to or exceed the difference between 40,513.85 and $75,000.01.[2]  Taking punitive damages as just one times actual damages pled on the face of the Complaint, the plaintiff has pled $81,027.78.  Thus, having presented claims under CUTPA, Ms. Kwolek's Complaint has pled a reasonable probability that the amount in controversy exceeds $75,000.

2.      Emotional Distress Compensatory Damages

In her Opposition to the Motion to Dismiss, Ms. Kwolek contends that the Coldwell defendants neither considered that she alleges damages for emotional distress nor seek to dismiss the claim of negligent infliction of emotional distress.  See Opp. at 7-8.  In their Reply, the Coldwell defendants fail to provide any counterarguments regarding the substantive claim or damages.

The court need not address whether emotional distress damages can or should be considered, given the court's conclusion that the assertion of CUTPA claims provides a reasonable probability that the amount in controversy exceeds $75,000.  However, it is worth emphasizing that, even if CUTPA punitive damages could not be considered, the additional claim for emotional distress damages could also provide a reasonable probability that the amount in controversy exceeds $75,000.

---

[2] "[T]he factors a court should consider in determining a punitive damages award include [1] the degree of relative blameworthiness, [2] whether the defendant's action was taken to maximize profit, [3] whether the wrongdoing was difficult to detect, [4] the extent of the plaintiff's injuries, [5] the amount of compensatory damages awarded, and [6] whether the punitive damages award would deter the defendant and others from similar conduct, [7] without financially destroying the defendant." Russo, 2020 WL 6712453, at *5 (internal quotation marks omitted) (quoting Ulbrich, 310 Conn. at 454).

10

Notwithstanding that the difficulty in approximating the possible recovery for a claim of negligent infliction of emotional distress, so long as the plaintiff has articulated "the kind of injury that gives rise to emotional distress damages", such damages may be properly considered in determining whether the amount in controversy requirement has been satisfied.  See Braden v. Murphy, No. 3:11cv884, 2012 WL 1069188, at *3 (D. Conn. Mar. 29, 2012).  Although Connecticut Superior Courts have dismissed emotional distress claims based on property damage or economic loss alone as legally incognizable, they have recognized such claims if premised on "separate and independent bases", such as, the presence of property contaminants.  See Leth v. Halloran & Sage, LLP, No. HHDCV166068019S, 2017 WL 1194321, at *8 (Conn. Sup. Ct. Feb. 21, 2017); Duffy v. Town of Wallingford, 49 Conn. Supp. 109, 121-23 (2004). Connecticut courts also permit recovery for emotional distress claims arising out of deceptive practices.  See, e.g., Carrol v. Allstate Ins. Co., 262 Conn. 433, 450 (2003) (affirming the trial court's decision denying a motion to set aside or reduce a jury verdict awarding $500,000 in compensatory damages for emotional distress upon finding that jury could have reasonably found wrongdoing by a "hasty, incomplete and ill-reasoned" investigation and "improper motivations").

Compensatory damages for emotional distress are necessarily dependent on context and the nature of the injury, resulting in a wide range of permissible awards. Compare Belina v. Schaller Auto World, Inc., 2009 WL 1707101 (Conn. Sup. Ct. May 21, 2009) ($1,140) with Carrol, 262 Conn. 433 ($500,000).  And, in appropriate circumstances, they may even exceed economic damages.  See, e.g., Murphy v. Lord Thompson Manor, Inc., 105 Conn. App. 546, 557-58 (2008) (affirming compensatory

11

award of $15,000 for emotional distress, although the plaintiff only received $2,000 in economic damages); <u>Carrol</u>, 262 Conn. at 448 (affirming compensatory award of $500,000 for emotional distress, although the economic damage award only equaled $26,468.38).  Given the wide range of permissible damages and no proffered arguments that the emotional distress award could not meaningfully contribute to satisfying the jurisdictional threshold, the defendants have failed to meet the "high bar" of showing "to a legal certainty" that the amount in controversy does not exceed $75,000.  <u>See</u> <u>supra</u>, at 7.

The face of the Complaint establishes a reasonable probability that the value of Ms. Kwolek's total recovery exceeds $75,000.  The Coldwell defendants have not shown that Ms. Kwolek cannot recover on any of her claims such that there is a legal certainty that she cannot recover in excess of $75,000.

Therefore, for the reasons stated, the court denies the Motion to Dismiss for lack of subject matter jurisdiction.

B.    <u>Motion to Strike</u>

In her Motion to Strike, Ms. Kwolek asks the court to strike the Coldwell defendants' argument regarding the "first-to-file" rule—raised for the first time in their Reply brief—or in the alternative, to provide leave to file a sur-reply.  <u>See</u> Mot. to Strike at 1.  While arguments made for the first time in a reply brief are usually deemed to have been waived, <u>see</u> D. Conn. L. Civ. R. 7(d); <u>Cadoret v. Sikorsky Aircraft Corp.</u>, 323 F. Supp. 3d 319, 326 n.7 (D. Conn. 2018), a court retains discretion to order additional briefing and consider the newly raised arguments.  <u>See</u> <u>Hybrid Athletics, LLC v. Hylete, LLC</u>, 2019 WL 4143035, at * 6 n.2 (D. Conn. Aug. 30, 2019).

As the Coldwell defendants' newly minted argument pertains to subject matter jurisdiction, the court would normally be amenable to consider the issue after giving Ms. Kwolek an opportunity to address the argument in a sur-reply.[3]  However, the court need not do so here because the rule the Coldwell defendants rely on is inapplicable to the case at bar.  The Coldwell defendants argue that, pursuant to the first-to-file rule, the court should grant their Motion to Dismiss based on Ms. Kwolek's pending state court action against Mr. Guglietti.  See Reply at 2.  They fail to realize, however, that the rule, determining which court has priority, only applies to parallel actions pending in two federal courts.  See Tucker v. Am. Int'l Grp., Inc., 728 F. Supp. 2d 114, 120-21 (D. Conn. 2010).  Thus, the rule does not apply to determine whether this court should dismiss the instant case in light of the action against Mr. Guglietti in state court.[4]

Having addressed the newly raised argument as inapposite, the plaintiff's Motion to Strike is denied as moot.

## V.     CONCLUSION

For the reasons stated herein, the court denies the Coldwell defendants' Motion to Dismiss (Doc. No. 17).  Further, the court denies the plaintiff's Motion to Strike (Doc. No. 25) as moot.

---

[3] Under Federal Rule of Civil Procedure 12(g)(2), a party cannot move to dismiss based on "a defense that was available to the party but omitted from its earlier motion."  However, the rule provides an exception for motions to dismiss for lack of subject matter jurisdiction.  See Fed. R. Civ. P. 12(g)(2).  See also  Berman v. LaBonte, 622 B.R. 503, 517 (D. Conn. 2020) ("Subject matter jurisdiction is not waivable, and a lack of subject matter jurisdiction may be raised at an time, by a party or the court sua sponte." (citing Gonzalez v. Thaler, 565 U.S. 134, 141 (2012))); Santoz-Zacaria v. Garland, 598 U.S. 411, 416 (2023) ("Jurisdictional objections also can be raised at any time in the litigation.").

[4] Even if the first-to-file rule applied to parallel actions in state and federal court, the threshold inquiry is whether the actions involve the same issue or issues and the same parties.  Tucker, 728 F. Supp. 2d. at 122.  Given the different defendants in the instant case and the state court action, the rule would be inapplicable.  Further, where there is federal diversity jurisdiction, the plaintiff gets to choose to proceed in federal or state court.

**SO ORDERED.**

Dated at New Haven, Connecticut this 3rd day of November 2023.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge